IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHERRY ANICICH, Independent Administrator of the ESTATE OF ALISHA BROMFIELD, Deceased, and as Special Administrator of the ESTATE OF BABY AVA LUCILLE, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 14 C 7125 |
| HOME DEPOT, U.S.A., INC.; JOHN MOSSEL; TODD MOSSEL; GRAND SERVICE, LLC; GRAND FLOWER GROWERS, INC.; and VINCA SOLUTIONS, LLC, | ) ) ) ) ) ) | Judge Jorge L. Alonso |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are defendants' motions to dismiss. For the reasons explained below, the first motion of Home Depot, U.S.A., Inc. to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is denied; the second motion of Home Depot, U.S.A., Inc. to dismiss the complaint pursuant to Rule 12(b)(6) is granted; the motion of John Mossel, Todd Mossel, Grand Service, LLC and Grand Flower Growers, Inc. to dismiss the complaint pursuant to Rule 12(b)(6) is granted; and the motion of Vinca Solutions, LLC to dismiss the complaint pursuant to Rule 12(b)(6) is granted.

**BACKGROUND**

The facts underlying this case are tragic. The complaint alleges as follows. In 2006, plaintiff Sherry Anicich's teenage daughter, Alisha Bromfield, began working for defendants

Grand Service, LLC and Grand Flower Growers, Inc. (collectively, "Grand"), which is a "joint venturer with or implied agent of" defendant Home Depot, U.S.A., Inc. ("Home Depot"). (R. 1-1, Compl. ¶¶ 3-4, 6.) Grand grows, supplies, cares for, and sets up the flowers and plants in Home Depot's garden centers in Illinois and also provides Home Depot with seasonal personnel who work in the garden centers. (*Id.* ¶¶ 3-4.) "[I]n that capacity," Grand "pays said employees via" defendant Vinca Solutions, LLC. ("Vinca"). (*Id.* ¶ 4.) The complaint does not identify defendants John Mossel and Todd Mossel, other than to state that they are "doing business as" Grand,[1] (*id.* at 1), but Grand's jurisdictional addendum describes them as two of the three members of Grand Service, LLC. (R. 57.)

Bromfield performed merchandising tasks and garden services for Grand at Home Depot locations in Shorewood, Bolingbrook, and Joliet, Illinois. (Compl. ¶ 6.) She continued to work there seasonally until her death in 2012. (*Id.*) When Bromfield was hired by Grand, she was put under the supervision of Brian Cooper, who had begun employment with Grand as a merchandiser and later received promotions to supervisor and/or store team leader and then to regional manager. (*Id.* ¶ 7.) As regional manager, Cooper was responsible for Grand's business operations and employees at Home Depot's garden centers throughout northern Illinois. (*Id.*)

It is alleged that Home Depot and Grand knew that Cooper "had psychological issues and dangerous propensities" and was "emotionally unstable and violent," thus causing Grand to

---

[1]"The designation d/b/a or doing business as[] generally indicates a sole proprietorship or some other situation where the named person owns or transacts business under an assumed name." *Main Street Dev. v. DeMicco*, 618 N.E.2d 442, 444 (Ill. App. Ct. 1993). The Grand entities, however, are a corporation and an LLC, not sole proprietorships. Given that plaintiff's theory of negligence rests upon the defendants' status as employers, her attempt in the introductory paragraph of the complaint to group the Mossels with the corporation and LLC is problematic. Whether plaintiff has stated a claim against the Mossels is addressed below in section D.

require him to attend anger-management therapy, which he failed to satisfactorily complete. Home Depot and Grand nevertheless allowed Cooper to remain a supervisor. (*Id.* ¶¶ 5, 11, 14.) While Bromfield was still a minor, Cooper demanded that she accompany him on business trips, where he "engaged in abusive and inappropriate conduct with" her; he "publically decr[ied]" her as a "whore" and "slut"; and he suggested to Bromfield that they have an "intimate relationship." (*Id.* ¶¶ 8, 11, 12.) Bromfield repeatedly complained about Cooper's conduct to Grand's management, yet defendants failed to take any action to investigate, monitor, limit, or control Cooper in his interactions with Bromfield. (*Id.* ¶¶ 12-13.) Plaintiff also alleges that the unidentified persons in Grand's management to whom Bromfield complained "actually cooperated with" Cooper in "arranging for [him] to be alone with" Bromfield "to facilitate his continuing pattern of abuse." (*Id.* ¶ 13.)

During 2012, Cooper began to express anger with Bromfield's attending college and her personal life. He "formulated a plan to continue his pattern of abuse and to consummate his relationship" with Bromfield. (*Id.* ¶ 15.) During his time alone with her at work, he insisted that she accompany him to his sister's wedding, which was to take place in Door County, Wisconsin, supposedly so that Bromfield could meet his family. (*Id.*) "With the assistance of others," Cooper persuaded her not to go to work on Friday, August 18, 2012 and to accompany him to the wedding instead. At the time, Bromfield was "pregnant and vulnerable, and needed to continue her employment, and was intimidated by" Cooper, so she agreed to go with him. (*Id.* ¶ 16.)

Once at the wedding, Cooper introduced Bromfield to various family members. After the ceremony, he brought Bromfield back to their hotel room, and "continued his pattern of verbal and physical abuse." (*Id.* ¶ 17.) When Cooper suggested that they "enter into a permanent

3

relationship," Bromfield declined, and Cooper "threatened her if she did not submit to him." (*Id.*) Then, as Bromfield begged for her life and that of her unborn child, Cooper strangled Bromfield for five minutes or more, until she was dead, and thereafter, undressed her and raped her corpse. (*Id.*) Bromfield had been nearly seven months pregnant, and although her unborn child, baby Ava Lucille, was viable, she died as a result of Bromfield's murder and rape. (*Id.* ¶ 18.)

The complaint alleges that defendants had a duty to use reasonable care to select employees who were competent to perform their duties and who would not use their authority to "intimidate and terrorize young girls" placed under their supervision, and a duty to "supervise, maintain, operate and monitor the condition of Home Depot garden centers premises as well as the conduct of [their] employees, agents or joint venturers present so as to not cause injury or damage to others." (*Id.* ¶¶ 19-20.) The complaint further alleges that defendants placed and retained Cooper in a position of authority knowing about his "practices and proclivities" and that he was unfit to supervise young female employees, particularly Bromfield, and that by allowing Cooper "unchecked authority" in selecting, retaining, and scheduling garden-center employees, defendants "created a reasonably foreseeable risk of danger to the public and the decedent, including risk of injury, serious bodily harm, and clearly death." (*Id.* ¶¶ 21-26.) It is plaintiff's theory that defendants' negligence proximately caused Cooper's abuse of Bromfield as well as Bromfield's and baby Ava Lucille's deaths. (*Id.* ¶ 27.)

Plaintiff, as the Independent Administrator of Bromfield's estate and the Special Administrator of baby Ava Lucille's estate, filed the instant complaint in the Circuit Court of Cook County, Illinois on August 11, 2014. With the consent of the other defendants, Grand Service, LLC removed the action to this court on the basis of diversity jurisdiction. The

complaint contains four counts: claims under the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq.*, for Bromfield's and baby Ava Lucille's wrongful deaths (Counts I and IV); a claim under the Illinois Survival Act, 755 ILCS 5/27-6, for Bromfield's pain and suffering prior to her death (Count II); and a claim for Bromfield's funeral and burial expenses (Count III).

## DISCUSSION

**A      Legal Standards**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted). Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

5

### B. Home Depot's First Motion to Dismiss

Home Depot took the unorthodox approach of filing two separate motions to dismiss instead of a single motion that raised all of its arguments. The Court will address each motion in turn.

In its first motion to dismiss (R. 14), Home Depot argues that plaintiff has failed to "plead facts" that support her allegations in paragraphs 3 and 4 of the complaint that Home Depot and Grand were engaged in a joint venture or that Grand was Home Depot's implied agent. (R. 14 at 2-3.) Home Depot's motion cites only state-law cases applying Illinois fact-pleading standards, not federal notice-pleading standards. Its reliance on these decisions is misplaced. Having consented to remove this action from state to federal court, Home Depot can no longer rely on Illinois pleading standards, which do not apply in federal court. *See* Fed. R. Civ. P. 81(c)(1) (stating that the Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court"); *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 671-72 (7th Cir. 2008) (stating that federal notice-pleading standards, rather than conflicting state-law standards, govern the sufficiency of a complaint); *Socorro v. IMI Data Search, Inc.*, No. 02 C 8120, 2003 WL 1964269, at *6 (N.D. Ill. Apr. 28, 2003).

In its reply brief, Home Depot argues that plaintiff's allegations of a joint venture or implied agency do not meet federal pleading standards. Home Depot has waived the argument by raising it for the first time in its reply brief. *See Darif v. Holder*, 739 F.3d 329, 336-37 (7th Cir. 2014). Even if Home Depot had not waived the argument, it would not have succeeded because it is undeveloped. Home Depot simply contends that plaintiff "fails to address the details of the relationships" among the defendants. (R. 40, Home Depot's Reply 3.) Putting to one side the fact that Home Depot seems to persist in urging the application of fact-pleading

standards, it fails to discuss the elements of a joint venture or agency under Illinois law and why the complaint fails to plausibly suggest this scenario.

Home Depot's first motion to dismiss is denied.

## C. Home Depot's Second Motion to Dismiss and Grand's Motion to Dismiss

District courts exercising diversity jurisdiction must apply the choice-of-law rules of the forum state to determine what substantive law governs the case. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "For tort actions, Illinois instructs the court to ascertain the forum with the 'most significant relationship' to the case." *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915-16 (7th Cir. 2006) (citing *Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1996)). The parties do not address this threshold issue, but they all rely on Illinois law. Therefore, the Court will apply Illinois law. *See Harter v. Iowa Grain Co.*, 220 F.3d 544, 559 n.13 (7th Cir. 2000) (the court will not perform an independent choice-of-law analysis where the parties agree on the governing law and the choice bears a "reasonable relation" to their dispute).

In Home Depot's memorandum in support of its second motion to dismiss, (R. 18 at 2), Home Depot asserts, and plaintiff does not dispute, that all of plaintiff's claims are based in negligence, so the sufficiency of the entire complaint depends upon it. To state a claim for negligence under Illinois law, plaintiff must plead that the defendants owed plaintiff a duty, they breached that duty, and the breach proximately caused plaintiff's injury. *See Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1097 (Ill. 2012). "Whether a duty is owed is a question of law for the court to decide, while breach and proximate cause are factual matters for the jury." *Iseberg v. Gross*, 879 N.E.2d 278, 284 (Ill. 2007).

Home Depot and Grand argue that plaintiff has failed to sufficiently allege that they owed Bromfield any duty.² While "[t]he concept of duty in negligence cases" can be "involved, complex, and nebulous," *Simpkins*, 965 N.E.2d at 1096 (citing *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1056 (Ill. 2006)), it is well-settled Illinois law that "'every person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons.'" *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 887-88 (Ill. 2012) (quoting *Simpkins*, 965 N.E.2d at 1097); *see also Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 515 (7th Cir. 2010) ("Illinois common law imposes a duty of reasonable care to avoid injuring other people. While persons generally have no duty to protect against dangers created by third parties, they do have a duty to protect against harms created by their own conduct." (internal quotation marks and citation omitted)) (citing, *inter alia*, Restatement (Second) of Torts § 314 (1965)).

The "touchstone" of the duty analysis is "to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Simpkins*, 965 N.E.2d at 1097 (emphasis omitted). This relationship need not be "direct." *Doe-3*, 973 N.E.2d at 888. The analysis "must begin with the threshold question of whether the defendant, by his act or omission, contributed to a risk of harm to this particular plaintiff." *Simpkins*, 965 N.E.2d at 1098; *see also Doe-3*, 973

---

²Grand also asserts that plaintiff has failed to state a claim against Grand under a theory of *respondeat superior*. (R. 19-1, Grand's Mem. Supp. Mot. 3.) As plaintiff points out, the argument is a non-starter because she does not rely on such a theory; she relies on a theory of direct negligence. Whether she states a claim given that theory is another issue.

8

N.E.2d at 888 ("[W]here a defendant's course of action creates a foreseeable risk of injury, the defendant has a duty to protect others from such injury."). If so, the court weighs four factors to determine whether a duty ran from the defendant to the plaintiff: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing the burden on the defendant." *Simpkins*, 965 N.E.2d at 1098. "Any analysis of the duty element turns on the policy considerations inherent in the above factors, and the weight accorded each of the factors depends on the circumstances of the particular case." *Doe-3*, 973 N.E.2d at 888. If the answer to the "threshold question" is no, the court should examine whether there are any "special relationships" that may give rise to a duty to aid or protect another from an unreasonable risk of harm.[3] *Simpkins*, 965 N.E.2d at 1098.

Plaintiff's complaint can be read as asserting that it was Home Depot and Grand's own acts and omissions that contributed to a risk of harm to Bromfield and her baby. Plaintiff alleges that because of Cooper's actions and Bromfield's complaints, Home Depot and Grand knew or should have been aware of Cooper's misconduct, emotional instability, and violent tendencies and that he would be likely to do violence to Bromfield, yet they continued to employ Cooper

---

[3]Home Depot sidesteps the Supreme Court's detailed description of the duty analysis in *Simpkins* and would have this Court proceed directly to an analysis of whether plaintiff has adequately alleged a "special relationship." Home Depot attempts to distinguish *Simpkins* on its facts because it was a products-liability case and did not involve third-party criminal conduct. (R. 41, Home Depot's Reply 3-4.) But the explanation of the duty analysis in *Simpkins* was not restricted to the facts of that case. It applies broadly to negligence cases. Home Depot confines its analysis to the general rule that persons generally have no affirmative duty to protect against dangers created by third parties, and its exceptions, but Home Depot fails to acknowledge that the no-affirmative-duty rule is not the totality of the analysis when it is alleged that "the defendant is affirmatively negligent in creating a risk of harm to the plaintiff through the instrumentality of another or otherwise." *Bruntjen v. Bethalto Pizza, LLC*, 18 N.E.3d 215, 231 (Ill. App. Ct. 2014) (citing Dan B. Dobbs, *The Law of Torts* § 414 (2011)).

9

and promoted him to and retained him in his supervisory role. (Compl. ¶¶ 11-14, 24-27.) The complaint also alleges that Cooper used his position of power over Bromfield to persuade her to go with him to his sister's wedding. (*Id.* ¶ 16.) Because plaintiff alleges that Home Depot and Grand's conduct contributed to the risk of harm, we proceed to the four factors listed above to determine whether plaintiff has sufficiently alleged a duty.

"[F]oreseeability means that which is objectively reasonable to expect, not merely what might conceivably occur." *Hills v. Bridgeview Little League Ass'n*, 745 N.E.2d 1166, 1184 (Ill. 2000). "A criminal attack by a third person is reasonably foreseeable when the circumstances are such as to put a reasonably prudent person on notice of the probability of an attack or when a serious physical altercation has already begun." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1148 (7th Cir. 2010) (citing *Shortall v. Hawkeye's Bar & Grill*, 670 N.E.2d 768, 770 (1996)). "[W]hat is required to be foreseeable is the general character of the event or harm[,] not its precise nature or manner of occurrence." *Marshall*, 856 N.E.2d at 1060 (citing, *inter alia*, *Blue v. St. Clair Country Club*, 131 N.E.2d 31, 34 (1955) ("[I]n order for liability to attach, it is not necessary that the exact method by which the injury occurred could have been expected. It is sufficient if some resulting injury could have been reasonably foreseen.")); *Slager v. Commonwealth Edison Co.*, 595 N.E.2d 1097, 1103 (Ill. App. Ct. 1992) (it is "not the precise pattern of events that must be foreseeable; rather, it is the risk of harm or danger to the one to whom the duty is owed"). "[R]easonable foreseeability must be judged by what was apparent to defendant at the time of the complained of conduct, and not by what may appear through hindsight." *Lewis v. Razzberries, Inc.*, 584 N.E.2d 437, 442 (Ill. App. Ct. 1991).

Home Depot contends that it had no duty to protect Bromfield because her murder was not reasonably foreseeable and plaintiff has failed to plead facts that show that Home Depot

knew that Bromfield's murder was likely to occur. (R. 18, Home Depot's Mem. Supp. Mot. 14.) Grand argues that Cooper's "violent and horrendous act" was not objectively reasonable to expect. (R. 19-1, Grand's Mem. Supp. Mot. 6.) Defendants' focus on the precise nature of the harm is misplaced, but the Court agrees that plaintiff has failed to plead facts sufficient to indicate that defendants had reason to anticipate that Cooper would attack Bromfield. The allegations of the complaint appear to be purposefully vague regarding what defendants knew or should have known about Cooper's prior conduct. Although it is alleged generally that Cooper had been "abusive" and that he had "publicly decr[ied]"[4] Bromfield as a "whore" and a "slut" at some unspecified point in time, (Compl. ¶¶ 8, 11), it is not alleged that he had been physically violent toward her. The only alleged instance of violence is Cooper's having "throw[n] items at employees" at an unspecified time. (*Id.* ¶ 11.) The nature of Cooper's prior alleged misconduct is not physical violence, but that he had inappropriately made efforts to have "an intimate relationship," (*Id.* ¶ 12), with Bromfield when she was still a minor. But it can be inferred that Bromfield was not a minor at the time of the attack in 2012 and likely had not been a minor for at least two years and possibly longer (it is alleged that she began working at Home Depot when she was a "teenager"; presumably, given Illinois child-labor law,[5] she was no younger than 14 at the time).

Even if it can be inferred that the alleged sexual harassment was still going on in 2012, the complaint contains few specifics about what Cooper did that year that would have led anyone, let alone defendants, to have reasonably foreseen that he was going to *attack* Bromfield

---

[4]No facts are alleged that indicate why defendants knew or should have known about Cooper's use of these epithets to describe Bromfield.

[5]*See* 820 ILCS 205/1.

in August.  It is not alleged that Cooper threatened her at any point in time or expressed any intention to attack her.  It is not alleged that defendants knew of any previous violence toward other women.  It is alleged that in 2012, Cooper "began to express anger" about Bromfield's attending college and her personal life.  (*Id.* ¶ 15.)  But it is not alleged what he said or to whom he expressed this anger or that defendants knew about it, and it is not alleged why his remarks would have reasonably led anyone to believe that he intended to attack her.

It is also alleged that "others," "whose identities are currently unknown to the plaintiff," assisted Cooper in "formulat[ing] a plan to continue his pattern of abuse and to consummate his relationship with" Bromfield.  (*Id.*)  Plaintiff mischaracterizes the complaint as alleging that *Grand* assisted Cooper in formulating this plan.  (R. 33, Pl.'s Resp. Grand's Mot. 13.)  There is no such allegation; indeed, plaintiff expressly concedes in the complaint that the identities of those who may have assisted Cooper are "unknown."  Moreover, the alleged "plan" is vaguely worded; it is unclear what is meant by the phrase "continue his pattern of abuse."  The complaint alleges no facts indicating any pattern of violence.  Plaintiff has failed to allege facts that plausibly suggest that defendants knew or should have known that Cooper was going to attack Bromfield.

Even assuming *arguendo* that the harm was reasonably foreseeable, "'[f]oreseeability is a necessary but not a sufficient condition for imposing a duty.'"  *Reynolds*, 623 F.3d at 1151 (quoting *Gustafson v. Mathews*, 441 N.E.2d 388, 390 (Ill. App. Ct. 1982)).  The likelihood of injury, the burden on the defendants of guarding against it, and any consequences of placing that burden on the defendants must also be considered.  *Id.*  It cannot be said that, on the facts alleged, injury was likely.  Plaintiff contends that Cooper's attack on Bromfield was "not just foreseeable, it was inevitable," considering his "historic pattern of misconduct and violent

12

tendencies" at Home Depot. (R. 33, Pl's Resp. Grand's Mot. 7; R. 32, Pl.'s Resp. Home Depot's Mot. 6.) The Court is unpersuaded by an argument that relies on the complaint's vagueness. In addition, the burden of guarding against this type of injury is immense. Plaintiff asserts that defendants' burden would merely be to "take obvious action," "implement reasonable measures to avoid empowering one employee to harm another," and "follow through with their own recognition of preventing workplace violence." (R. 33, Pl's Resp. Grand's Mot. 8; R. 32, Pl.'s Resp. Home Depot's Mot. 7.) The argument is without merit. This was not an instance of workplace violence, and plaintiffs fail to identify the "obvious action" or "reasonable measures" that defendants should have taken to prevent such an attack that occurred without warning far from the workplace. Defendants are unable to control their employees' social activities outside of work that occur off the premises. The Court agrees with Home Depot that imposing a duty on defendants under the circumstances would have unreasonable consequences.

Plaintiff's allegations do not support the theory that the defendants created or contributed to the risk that Cooper would attack Bromfield. But even when one has not created a risk of harm, a duty to take affirmative action to aid another may arise where there exists a legally-recognized "special relationship" between the parties. *Simpkins*, 965 N.E.2d at 1097. Such a duty is premised upon a relationship that is independent of the specific situation that gave rise to the harm. *Id.* at 1097-98. The Illinois Supreme Court has recognized four "special relationships" that may give rise to a duty to aid or protect another from an unreasonable risk of physical harm: (1) common carrier and passenger; (2) innkeeper and guest; (3) custodian and ward; and (4) business invitor and invitee. *Id.* at 1098.

Plaintiff does not contend that any of these four types of relationships apply here, but that this case fits within two other exceptions to the no-affirmative-duty rule that have been

13

recognized by Illinois courts. (R. 33, Pl's Resp. Grand's Mot. 9; R. 32, Pl.'s Resp. Home Depot's Mot. 9.) One exception arises "when an employee is in imminent danger and this is known to the employer." *Petersen v. U.S. Reduction Co.*, 641 N.E.2d 845, 848 (Ill. App. Ct. 1994). As the *Petersen* court explained, this exception is based on § 512 of the Restatement (Second) of Agency. 641 N.E.2d at 849. Section 512(1) provides that if "a servant, while acting within the scope of [her] employment, comes into a position of imminent danger of serious harm and this is known to the master or to a person who has duties of management, the master is subject to liability for a failure by himself or by such person to exercise reasonable care to avert the threatened harm." Restatement (Second) of Agency § 512(1) (1958).

In *Petersen*, the widow of a truck driver had sued an aluminum manufacturer for wrongful death after a sniper had shot and killed the driver as he drove his truck away from a picket line he had crossed during a strike at the manufacturing plant. 641 N.E.2d at 847. The appellate court held that the defendant owed the driver no duty to warn him that it had received threats to shoot replacement drivers it was using or of an uncorroborated report that gunshots had been fired at the plant during the strike. *Id.* at 852. The court determined that because the driver was not defendant's employee, § 512 of the Restatement did not apply, but even if he had been an employee, the protection against imminent danger does not include "warning of an inchoate threat that harm occasioned by the criminal act of an unidentified assailant might occur to an unspecified person at an unspecified time and location." *Id.* at 850. The court discussed the examples provided in the commentary to § 512 and further explained: "We believe that 'protection' under the Restatement encompasses such provisions as 'portal to portal' security, which [the manufacturer] had the foresight to provide." *Id.*

14

Plaintiff does not cite any decisions applying Illinois law that discuss the scope of § 512 in greater detail than did *Petersen*. Plaintiff also fails to explain, and the Court does not see, how the facts alleged in the complaint fit within the exception, given its construction in *Petersen*. Cooper and Bromfield were far from defendants' premises during the attack; moreover, plaintiff has not alleged even an inchoate threat, and in any event no facts from which it can be reasonably inferred that, defendants knew that Bromfield was in a position of *imminent* danger.

Plaintiff contends that another exception to the no-affirmative-duty rule applies that arises "when any party voluntarily or contractually assumes a duty to protect another from the harmful acts of a third party." *See id.* at 848; *Regions Bank v. Joyce Meyer Ministries, Inc.*, 15 N.E.3d 545, 549 (Ill. App. Ct. 2014); *Blankenship v. Securitas Sec. Servs. USA, Inc.*, 21 N.E.3d 1259, 1264 (Ill. App. Ct. 2014). "In Illinois, this exception has been narrowly construed and the duty imposed is limited by the extent of the undertaking." *Regions Bank*, 15 N.E.2d at 549; *see also Aidroos v. Vance Uniformed Prot. Servs., Inc.*, 897 N.E.2d 402, 407 (Ill. App. Ct. 2008) (brackets omitted). The voluntary-undertaking doctrine is based in relevant part on § 324A of the Restatement (Second) of Torts, which plaintiff cites in part as follows: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if . . . he has undertaken to perform a duty owed by the other to the third person." (R. 33, Pl.'s Resp. Grand's Mot. 11; R. 32, Pl.'s Resp. Home Depot's Mot. 11 (both citing Restatement (Second) of Torts § 324A(b) (1965)).

In plaintiff's view, defendants "undertook to provide the Decedent a safe working relationship with Brian Cooper by requiring him to attend anger management" counseling. (R.

33, Pl's Resp. Grand's Mot. 12; R. 32, Pl.'s Resp. Home Depot's Mot. 12.) The problem with this argument as to Home Depot is that plaintiff does not allege that *Home Depot* required Cooper to attend anger-management therapy; she alleges that *Grand* did so. (Compl. ¶ 5.) Plaintiff has not alleged that Home Depot made an undertaking. As to Grand, plaintiff cites no authority for the proposition that requiring Cooper to attend anger-management counseling can be characterized as an undertaking (in plaintiff's words) "to render services to the Decedent and her co-employees" or to provide anyone with a safe working environment. (R. 33, Pl's Resp. Grand's Mot. 12; R. 32.) There are a number of reasons why Grand might have required Cooper to go to counseling, and plaintiff alleges no facts from which it can be plausibly inferred that Grand did so in an effort to protect Bromfield. In addition, plaintiff fails to explain how the exception applies given the principle that the duty imposed is limited to the extent of the undertaking. The facts alleged in the complaint do not fit within the "voluntary undertaking" exception.

Plaintiff has failed to allege facts that plausibly suggest that defendants owed a duty to Bromfield. Plaintiff argues that "findings of no-duty are unusual and sharply frowned upon by the Illinois Supreme Court," (R. 33, Pl's Resp. Grand's Mot. 9; R. 32, Pl.'s Resp. Home Depot's Mot. 9-10), citing *Marshall*, but in the discussion to which plaintiff refers, the Illinois Supreme Court was not addressing a particular *finding*. The Supreme Court rejected defendant's argument that *as a rule*, landholders who open their land to the public for business purposes should have no duty to protect invitees against out-of-control drivers. 856 N.E.2d at 1060. This Court is not creating or imposing a blanket rule regarding duty. Rather, it is the Court's holding that plaintiff has failed to plausibly allege a duty.

16

Where, as here, there are no Illinois decisions squarely on point, the Court must decide the case as it believes Illinois courts would. *See Reynolds,* 623 F.3d at 1148. The Court's research has not revealed, nor has plaintiff cited, any Illinois authority that recognizes an employer's duty in circumstances like those presented here or even remotely similar circumstances. Cooper's attack on Bromfield and her unborn child was brutal and heinous, but the Court believes that based on what is alleged in the complaint, Illinois courts would not find that the defendants owed Bromfield a duty to protect her from the attack. When no duty is owed, there can be no liability for negligence as a matter of law. Accordingly, the remaining motions to dismiss are granted, and the complaint is dismissed without prejudice.

**D.      John and Todd Mossel and Vinca**

In addition to the failure to sufficiently allege a duty, there is a more basic reason to dismiss the complaint as against John and Todd Mossel and Vinca Solutions, LLC. The complaint insufficiently groups these defendants together with Grand Service, LLC and Grand Flower Growers, Inc. and refers to all five defendants collectively as "Grand."

The Mossels contend that they cannot be liable for the acts of corporations that they own unless there are sufficient veil-piercing allegations. In response, plaintiff maintains that the Mossels are "personally liable because they were negligent despite specifically knowing of Brian Cooper's violent tendencies and they failed to take appropriate action." (R. 33, Pl.'s Resp. Grand's Mot. 14.) But plaintiff fails to acknowledge that her theory of negligence rests upon the defendants' status as Cooper and Bromfield's employers. Because the complaint simply groups the Mossels together with the Grand corporate and LLC entities without including any allegations indicating that the individuals can be considered to have been Cooper and Bromfield's employers, the complaint fails to state a claim against the Mossels.

17

Vinca contends that plaintiff fails to state a claim against it because there is no allegation that it employed Cooper and Bromfield. Plaintiff argues that she "has asserted a plausible theory of negligence" against it due to "its complete failure to take any actions to prevent a known violent employee . . . from harming and murdering his co-employee." (R. 50, Pl's Resp. Vinca's Mot. 4.) This argument begs the question because the complaint does not allege that Vinca employed Cooper or Bromfield. It alleges, insufficiently, that "Grand" "pays [its] employees via" Vinca. (Compl. ¶ 4.)

**E.      Negligent Supervision**

Lastly, plaintiff argues that she has stated a claim for negligent supervision. The complaint refers to negligent hiring and retention in paragraph 27, but does not set out a separate negligent-supervision claim. Under Illinois law, to "'succeed in an action for negligent supervision, the plaintiff must plead and prove that the employer knew or should have known that its employee had a particular unfitness for his position so as to create a danger of harm to third persons and that the employer's failure to safeguard the plaintiff against this particular unfitness proximately caused the plaintiff's injury.'" *Hasbun v. United States*, 941 F. Supp. 2d 1011, 1015 (N.D. Ill. 2013) (quoting *Platson v. NSM, Am., Inc.*, 748 N.E.2d 1278, 1284 (Ill. App. Ct. 2001)). "[T]he particular unfitness of the employee must have rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position." *Platson*, 748 N.E.2d at 1284 (citing *Van Horne v. Muller*, 705 N.E.2d 898, 906 (Ill. 1998)). As the Court has discussed, plaintiff fails to allege facts that plausibly suggest that Cooper's attack on Bromfield was reasonably foreseeable. Although plaintiff is correct that "there are reported cases in Illinois [in] which courts have recognized that an employer may be held liable for the negligent hiring, supervision, or retention of an employee who intentionally harmed someone while acting outside

the scope of his employment," (R. 33, Pl's Resp. Grand's Mot. 9; R. 32, Pl.'s Resp. Home Depot's Mot. 9), the decisions plaintiff cites fall within the purview of the Restatement (Second) of Torts § 317, "which provides that an employer may be liable for harm caused by an employee acting outside the scope of his employment if the employee is on the employer's premises or using chattel of the employer, and the employer has reason to know of the need and opportunity for exercising control over the employee." *Escobar v. Madsen Constr. Co.*, 589 N.E.2d 638, 640 (Ill. App. Ct. 1992). Cooper was not on defendants' premises, was not doing work for them, and is not alleged to have been using their property when he murdered Bromfield, nor is it alleged that defendants had any opportunity to control him at the time. Plaintiff has failed to state a claim for negligent supervision, and it does not appear that she will be able to do so given the facts.

## CONCLUSION

For the reasons set forth above, the first motion of Home Depot, U.S.A., Inc. to dismiss [14] is denied; the second motion of Home Depot, U.S.A., Inc. to dismiss [16] is granted; the motion of John Mossel, Todd Mossel, Grand Service, LLC, and Grand Flower Growers, Inc. to dismiss [19] is granted; and the motion of Vinca Solutions, LLC to dismiss [38] is granted. The complaint is dismissed without prejudice. In the event that plaintiff believes that she can cure the deficiencies identified above in an amended complaint, consistent with legal authority and Rule 11 concerns, she is given until June 30, 2015 to file an amended complaint. If no amended complaint is filed by that date, the Court will dismiss this action with prejudice.

**SO ORDERED.**  ENTERED: June 9, 2015

_____
**JORGE L. ALONSO**
**United States District Judge**