**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHERRY ANICICH, Independent Administrator of the Estate of Alisha Bromfield, Deceased, and as Special Administrator of the Estate of Baby Ava Lucille, | ) | |
| Plaintiff, | ) | No. 14 C 7125 |
| v. | ) | Judge Jorge L. Alonso |
| HOME DEPOT, U.S.A., INC.; GRAND SERVICE, LLC; and GRAND FLOWER GROWERS, INC., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the defendants' motions to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the Court grants the motions.

## BACKGROUND

The Court dismissed the original complaint without prejudice pursuant to Rule 12(b)(6). *Anicich v. Home Depot, U.S.A., Inc.*, No. 14 C 7125, 2015 WL 3604734 (N.D. Ill. June 9, 2015). Plaintiff was given leave to amend, and she filed an amended complaint that pared down the number of defendants. The remaining defendants—Grand Service, LLC, Grand Flower Growers, Inc. (collectively, "Grand"), and Home Depot, U.S.A., Inc. ("Home Depot")—have filed motions to dismiss the amended complaint. The Court assumes that the reader is familiar with our earlier opinion, which discussed in detail the tragic facts of this case. *See id.* at *1-2.

Plaintiff's daughter, Alisha Bromfield, and her unborn child, Ava Lucille, were murdered by Brian Cooper, who was Bromfield's supervisor at work.[1] The murders occurred in August 2012 at a resort in Wisconsin. After Cooper and Bromfield attended the wedding of Cooper's sister in Door County, Cooper brought Bromfield back to the resort hotel room he had rented for them and suggested that they enter into a permanent relationship. When Bromfield declined, Cooper threatened her and her baby's life, strangled her for five minutes or more until she was dead, undressed her, and raped her corpse. (ECF No. 61, Am. Compl. ¶¶ 51, 53, 65.)

The amended complaint contains the same four counts as the original complaint: claims under the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq.*, for the wrongful deaths of Bromfield and Ava Lucille (Counts I and IV); a claim under the Illinois Survival Act, 755 ILCS 5/27-6, for Bromfield's pain and suffering prior to her death (Count II); and a claim for Bromfield's funeral and burial expenses (Count III).

## DISCUSSION

### A. Legal Standards

On a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts as true all well-pleaded facts in the complaint, and draws all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial

[1]The amended complaint alleges that Grand "provides certain seasonal personnel to Home Depot as well as grows, supplies, and then sets up and cares for the flowers and plants at garden centers located within Home Depot." (ECF No. 61, Am. Compl. ¶ 9.) It is alleged that Grand and Home Depot were the joint employers of Cooper and Bromfield. (*Id.* ¶¶ 9, 11, 14.)

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

**B. Allegations of the Original Complaint and the Court's Previous Opinion**

It is undisputed that all of plaintiff's claims were and are premised on defendants' negligence. The original complaint alleged that for more than five years, Cooper was Bromfield's supervisor at various Home Depot garden centers in northern Illinois (Compl. ¶¶ 6-7; was "abusive" to and "inappropriate . . . with" Bromfield on "business trips" in the region (it was not specified how or when) (*id.* ¶ 8); had "publicly decr[ied]" her as a "whore" and "slut" at an unspecified point in time, (*id.* ¶ 11); had "throw[n] items at employees" at an unspecified time (*id.* ¶ 11); was "open in suggesting an intimate relationship between himself" and Bromfield (*id.* ¶ 12); "was required [by Grand] to attend anger management therapy," which he failed to "satisfactorily complete" (*id.* ¶¶ 5, 14); and in 2012 "began to express anger" (it was not alleged to whom) "about [Bromfield]'s attending college and her personal life" (*id.* ¶ 15). It was not alleged that Cooper had been physically violent to Bromfield, threatened her with violence prior to the murder, or expressed to anyone any intention to attack her or that defendants knew that Cooper had previously been physically violent to anyone.

The Court held that because plaintiff failed to allege facts that plausibly suggested that Home Depot or Grand knew or should have known that Cooper was going to attack Bromfield, plaintiff failed to sufficiently allege that Home Depot and Grand owed Bromfield any duty, as is

required to state a claim for negligence.[2] *Anicich*, 2015 WL 3604734, at *3-6. Even assuming that the harm was reasonably foreseeable, plaintiff had also failed to plead facts that favored imposing a duty on the defendants under the remaining factors in the duty analysis under Illinois law. *Id.* at *6. The Court rejected plaintiff's arguments that she had stated negligence claims under two exceptions to the general rule that there is no affirmative duty to protect another from the criminal acts of a third person (when an employee is in imminent danger and this is known to the employer, and when there is negligence in the performance of a voluntary undertaking). *Id.* at *7-8. The Court also rejected plaintiff's argument that she had stated a claim for negligent supervision. *Id.* at *9.

**C. Allegations of the Amended Complaint**

In addition to the allegation that Grand and Home Depot were the "joint employers" of Cooper and Bromfield, plaintiff has added the following material factual allegations to the

---

[2]To state a claim for negligence under Illinois law, plaintiff must plead that the defendants owed plaintiff a duty, they breached that duty, and the breach proximately caused plaintiff's injury. *See Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1096 (Ill. 2012). "Whether a duty is owed is a question of law for the court to decide, while breach and proximate cause are factual matters for the jury." *Iseberg v. Gross*, 879 N.E.2d 278, 284 (Ill. 2007). "While persons generally have no duty to protect against dangers created by third parties, they do have a duty to protect against harms created by their own conduct." *Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 515 (7th Cir. 2010) (citing Illinois law). If it is sufficiently alleged that the defendant contributed to the risk of harm to the plaintiff, the court weighs four factors to determine whether a duty ran from the defendant to the plaintiff: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing the burden on the defendant." *Simpkins*, 965 N.E.2d at 1098. If the answer to the "threshold question" as to the contribution to risk is no, the court should examine whether there are any "special relationships" that may give rise to a duty to aid or protect another from an unreasonable risk of harm. *Id.*

amended complaint.[3] Beginning in 2007, Cooper was the supervisor of a "young female employee" named Jessica who had begun working at the Joliet Home Depot store after completing high school. (Am. Compl. ¶ 18.) Cooper engaged in "inappropriate conduct toward" her by "making references to his penis," falsely introducing Jessica as his girlfriend, and "physically rubbing himself against Jessica." (*Id.* ¶¶ 19-20.) Jessica told Kelly Elwell, a "group leader"[4] at the Joliet store, about Cooper's "misconduct" and that it made her feel uncomfortable, and Elwell said that other coworkers had made similar complaints about Cooper and even Elwell felt uncomfortable around him. (*Id.* ¶ 21.) Over time, Jessica became "increasingly apprehensive" about her work environment due to Cooper's "increasingly loud and abusive" conduct in that he would "yell and swear" at her around customers. (*Id.* ¶ 22.) When Jessica quit working at Home Depot, she told Cooper over the phone to avoid telling him in person, and he swore and yelled at her. (*Id.* ¶ 23.) It is not alleged when any of these events occurred.

On at least two unspecified occasions, Cooper similarly called Bromfield a "bitch" within earshot of customers and employees. (*Id.* ¶ 26.) Bromfield was scared of Cooper, told Elwell not to "leave [her] with him," and complained that Cooper had referred to her as his girlfriend. (*Id.* ¶ 27.) At some point, management personnel at Home Depot's Joliet store sent Cooper home from work after he "slamm[ed] items around the store in fits of rage." (*Id.* ¶ 29.)

At the Shorewood Home Depot store on an unspecified date when the temperature was over 100 degrees, Bromfield asked Cooper for a break. (*Id.* ¶ 32.) He denied her request, and

[3]Some of these facts were included in the original complaint but are further developed in the amended complaint.

[4]The amended complaint does not explain the role of a "group leader" or whether this position entailed any supervisory authority.

when a manager named Tina Clem saw that Bromfield was upset and crying, she told Cooper that Bromfield needed a break. (*Id.* ¶ 33.) Sometimes, Cooper would not allow Bromfield to take a lunch break, including times when she "was going to be accompanied by a male." (*Id.*) On one occasion when Bromfield asked Cooper for a day off, he called her a "slut" and a "whore" within earshot of customers and employees. (*Id.* ¶ 34.) As a result of this conduct, Mark Hanouw, the store manager, told Clem to send Cooper home. (*Id.* ¶ 35.) As Cooper was leaving work, he continued to yell at Bromfield and another female employee and sent them text messages later that evening. (*Id.*) After Cooper learned that Bromfield was pregnant with another man's child, Clem "witnessed Cooper stewing angrily in the patio section," and she thought that Cooper's "demeanor toward" Bromfield "changed." (*Id.* ¶ 36.)

Cooper repeatedly called and sent text messages to Bromfield under the false pretense of discussing work-related matters, in order to "intimidate" her, "monitor her life outside of work," and invite her to spend time alone with him. (*Id.* ¶ 38.) Bromfield "continuously decline[d] and reject[ed] these unwelcomed advances" and complained on multiple occasions "about this harassment to Grand management, including the group leader at Home Depot Shorewood, and specifically requested not to be alone with [Cooper]," but despite these complaints, defendants' management "simply told" Bromfield that "they were already aware of Cooper's anger problems." (*Id.* ¶¶ 38-39.) Defendants failed to require Cooper to complete anger-management classes after Grand had "superficially" asked Cooper to take them. (*Id.* ¶¶ 41-42.)

Grand and Home Depot knew that Cooper took Bromfield "on day trips" to various Home Depot stores, "allegedly for work purposes," during which he "engaged in [unspecified] abusive and inappropriate conduct with" Bromfield, "and one time required that they sleep in the same room." (*Id.* ¶ 46.) It is not alleged that anyone at Grand or Home Depot knew about the

latter fact, but that "Grand's business records from that trip would make it obvious that Cooper only had one (1) room booked for two employees." (*Id.* ¶ 47.)

Cooper asked Bromfield at least twice to accompany him to his sister's wedding in Wisconsin, and she refused. (*Id.* ¶ 49.) Thereafter, Cooper told her that he would reduce her work hours or fire her if she did not go with him. (*Id.* ¶ 50.) Bromfield went with him to the wedding on Friday, August 18, 2012. (*Id.* ¶ 51.) It is alleged on information and belief that while they were in Wisconsin, "Cooper arranged for [Bromfield] to be clocked in by a team leader of Grand, which can be accomplished only by using a Home Depot" landline telephone located on Home Depot's premises, so that Bromfield would be paid as if she had gone to work that day. (*Id.* ¶ 52.)

**D. Defendants' Motions to Dismiss the Amended Complaint**

Defendants contend that the additional allegations about defendants' awareness of Cooper's unprofessional conduct, sexual harassment of Bromfield and another employee, and "clocking-in" scheme still do not permit a reasonable inference that Cooper's attack on Bromfield was reasonably foreseeable. The Court agrees. Viewing the amended complaint in the light most favorable to the plaintiff, it can be inferred that defendants knew that Cooper had sexually harassed and verbally abused Bromfield and another female employee, had angrily thrown items in the store, and had failed to complete an anger management course that he had been directed to complete. Given these allegations, which are taken as true for purposes of the instant motions, the Court finds it surprising and regrettable that Cooper was still employed as a

regional manager, or employed at all, in 2012.[5] Nevertheless, although plaintiff frequently cites "violent" behavior of which defendants were allegedly aware, it is not alleged that Cooper had been physically violent to Bromfield or anyone else prior to the murders or had threatened violence. Plaintiff's characterization of Cooper's conduct appears to stem from hindsight. What is considered reasonably foreseeable, however, depends not on hindsight, but on what information was known to defendants in 2012. *See Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1099 (Ill. 2012); *Lewis v. Razzberries, Inc.*, 584 N.E.2d 437, 442 (Ill. App. Ct. 1991). Plaintiff contends wholly without support in the allegations that "Grand and Home Depot . . . knew of the *imminent harm* to [Bromfield] and did nothing to stop it." (ECF No. 73, Pl.'s Resp. at 11 (emphasis added).) The amended complaint plausibly alleges that it was *conceivable* that Cooper would attack someone, given his history, but not that "the circumstances [we]re such as to put a reasonably prudent person on notice of the *probability* of an attack," as is required for the element of foreseeability. *See Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1148 (7th Cir. 2010) (emphasis added); *Hills v. Bridgeview Little League Ass'n*, 745 N.E.2d 1166, 1184 (Ill. 2000). No duty can exist unless the crime was reasonably foreseeable, which the amended complaint fails to sufficiently allege.

Even when a defendant has not created or contributed to a risk of harm and thus assumed a duty to protect against injury that flows from that course of action, Illinois courts have recognized that a duty to take affirmative action to protect another may arise in other instances. *Anicich*, 2015 WL 3604734, at *6-8 (citing cases). Plaintiff invokes two provisions of the

---

[5]Home Depot's characterization of Cooper's behavior in the workplace as his having "ma[d]e a few mistakes" (ECF No. 75, Home Depot's Reply at 13), strikes the Court as cavalier.

Restatement (Second) of Agency, §§ 512(1) and 471. The Court discussed § 512(1) in its previous opinion. That provision states: "If a servant, while acting within the scope of his employment, comes into a position of imminent danger of serious harm and this is known to the master or to a person who has duties of management, the master is subject to liability for a failure by himself or by such person to exercise reasonable care to avert the threatened harm." Restatement (Second) of Agency § 512(1) (1958); *see also Petersen v. U.S. Reduction Co.*, 641 N.E.2d 845, 849-50 (Ill. App. Ct. 1994). The Court previously rejected plaintiff's contention that the facts of this case fit within this exception. *Anicich*, 2015 WL 3604734, at *7 ("Cooper and Bromfield were far from defendants' premises during the attack; moreover, plaintiff has not alleged even an inchoate threat, and in any event no facts from which it can be reasonably inferred that, defendants knew that Bromfield was in a position of *imminent* danger."). These facts have not changed. In an attempt to fit the allegations into the "acting within the scope of employment" factor, plaintiff argues that Bromfield "was 'on the clock' at the time of her death" (Pl.'s Resp. at 11), but ignores the fact that even according to the complaint, that was false and Bromfield was not working.

Section 471 of the Restatement provides that a "principal is subject to liability in an action of tort for failing to use care to warn an agent of an unreasonable risk involved in the employment, if the principal should realize that it exists and that the agent is likely not to become aware of it, thereby suffering harm." Restatement (Second) of Agency § 471 (1958); *see also Iseberg v. Gross*, 879 N.E.2d 278, 285-88 (Ill. 2007). Plaintiff has failed to state a claim under this theory. Plaintiff asserts that "[d]efendants failed to warn [Bromfield] of the risk of obeying Cooper while she was 'clocked in' under his control," (Pl.'s Resp. 11-12), but as discussed above, plaintiff does not allege facts from which it can be reasonably inferred that

defendants should have realized that Bromfield was at risk of being physically attacked by Cooper, or had superior knowledge of that risk. It is also doubtful that the risk was "involved in the employment" as Illinois courts construe that requirement. *See, e.g.*, *Iseberg*, 879 N.E.2d at 287-88; *MacDonald v. Hinton*, 836 N.E.2d 893, 900-01 (Ill. App. Ct. 2005) (stating that "if the act is not related to the employer's business, it cannot serve as a basis for employer liability" and "for the risk to be 'involved in the employment,' it must arise from the particular nature of the employment").

Plaintiff also again maintains that she has stated a claim for negligent supervision because she has alleged that defendants "knew of [Cooper's] pattern of misconduct and violent tendencies." (Pl.'s Resp. at 13.) The Court disagrees. To "'succeed in an action for negligent supervision, the plaintiff must plead and prove that the employer knew or should have known that its employee had a particular unfitness for his position so as to create a danger of harm to third persons and that the employer's failure to safeguard the plaintiff against this particular unfitness proximately caused the plaintiff's injury.'" *Hasbun v. United States*, 941 F. Supp. 2d 1011, 1015 (N.D. Ill. 2013) (quoting *Platson v. NSM, Am., Inc.*, 748 N.E.2d 1278, 1284 (Ill. App. Ct. 2001)). "[T]he particular unfitness of the employee must have rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position." *Platson*, 748 N.E.2d at 1284 (citing *Van Horne v. Muller*, 705 N.E.2d 898, 906 (Ill. 1998)). As discussed above, however, there are no allegations of a prior pattern of violence from which it can be inferred that Cooper's attack was reasonably foreseeable to defendants.

It remains the case that there is no Illinois decision that recognizes an employer's duty in circumstances like, or even remotely similar to, those presented here. Because plaintiff has

failed to plausibly allege a claim for negligent supervision or that the defendants had a duty to protect Bromfield from Cooper's criminal conduct, the amended complaint is dismissed.

Home Depot seeks a with-prejudice dismissal. (ECF No. 69, Home Depot's Mot. at 3; ECF No. 71, Home Depot's Mem. Supp. Mot. at 16.) Plaintiff does not respond to the "with prejudice" request and does not seek leave to amend in the event of dismissal. Presumably, the plaintiff set out in the amended complaint all of the facts available to her in an effort to address the deficiencies discussed in the Court's prior opinion, so the Court is dubious that plaintiff will be able to file an amended pleading that states a claim. If plaintiff believes that she can file a second amended complaint consistent with the Court's opinions and Rule 11, she may file by April 1, 2016 a motion seeking leave to do so. The Court will therefore dismiss the amended complaint without prejudice at this juncture. If plaintiff does not file a timely motion or it appears from the motion that amendment would be futile, the Court will dismiss this suit with prejudice.

**CONCLUSION**

The motions of Grand Service, LLC, Grand Flower Growers, Inc., and Home Depot, U.S.A., Inc. to dismiss the amended complaint [67, 69] are granted. The amended complaint is dismissed without prejudice, and plaintiff is given until April 1, 2016 to file a motion seeking leave to file a second amended complaint (and attaching the proposed second amended complaint). If plaintiff fails to do so, the Court will dismiss this action with prejudice.

**SO ORDERED.** **ENTERED: March 11, 2016**

**JORGE L. ALONSO**
**United States District Judge**